## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY (NEWARK)

| | |
|---|---|
| GARY S. GRAIFMAN, | **COMPLAINT** |
| Relator, | Case No. |
| v. | **CIVIL ACTION**<br>FALSE PATENT MARKING<br>UNDER 35 U.S.C. §292 |
| TOPPS COMPANY, INC., | |
| Defendant. | |

Relator Gary S. Graifman, by his attorneys, Kantrowitz Goldhamer & Graifman, P.C., alleges upon personal knowledge as to himself and upon information and belief otherwise and hereby complains against Defendant, Topps Company, Inc., as follows:

### NATURE OF THE CASE

1.      This is an action for false patent marking under Title 35, Section 292, of the United States Code.

2.      As set forth in detail below, Defendant violated and continues to violate 35 U.S.C. § 292(a) by marking certain products with patents which, in fact, do not cover the marked products.

3.      Defendant committed such violations of 35 U.S.C. § 292(a) with an intent to deceive

1

competitors and the public.

## PARTIES

4.      Defendant Topps Company, Inc. is a Delaware corporation with its principal place of business at One Whitehall Street , New York, NY 10004.

5.      Defendant Topps Company, Inc. also maintains operations in Duryea, PA.

6.      Relator is a resident of Bergen County, New Jersey.

## VENUE, JURISDICTION AND APPLICABLE LAW

7.      Relator brings this action under 35 U.S.C. § 292(b), which provides that any person may sue for civil monetary penalties for false patent marking.

8.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over the Defendant because Defendant conducts a substantial amount of business in this District and its products, which are the subject of this action, were and are widely offered for sale and sold in this District.

10.     Venue is proper in this District under 28 U.S.C. §§ 1391(c) and 1395(a).   Relator also resides in this District.

## RELATOR'S ALLEGATIONS

11.     Defendant markets well known confectionary products in the United States including its Ring Pop, ® Baby Bottle Pop ® and Bazooka Joe ® products.

12.     Defendant's Ring Pop ® product is a specialty lollipop generally sold at retail as an individually wrapped, 1-unit package.   Ring Pops are characterized by a plastic ring portion that may be worn as a ring on a consumer's finger and a gem-shaped hard candy portion that is supported

by the ring portion.

13.     Ring Pops are sold, in this district and nation-wide, in a variety of types of retail locations including large retailers such as Toys R Us and Walmart, convenience stores such as Duane Reade, CVS and 7-Eleven, as well as "mom and pop" candy stores and magazine stands.  A typical retail price for a Ring Pop is this district is around One U.S. Dollar.

14.     Typical Ring Pop package fronts are shown on page 1 of Exhibit A; the backs of these same packages are shown on page 2 of Exhibit A.  As shown on page 2 of Exhibit A, the Ring Pop packages are marked with United States patent numbers, specifically U.S. Design Patent Nos. 242646 and 242645.

15.     U.S. Design Patent No. 242645 ("the '645 patent) is entitled "Ring Having a Matrix for Candy," was issued December 7, 1976 and indicates a patent term of 14 years on its face.  A true copy of U.S. Design Patent No. 242645 is attached hereto as Exhibit B.

16.     U.S. Design Patent No. 242646 ("the '646 patent) is entitled "Combined Candy and Ring" was issued December 7, 1976 and indicates a patent term of 14 years on its face.  A true copy of U.S. Design Patent No. 242646 is attached hereto as Exhibit C.

17.     As shown in Exhibit A, the patent marking on the Ring Pop packages are stated definitively, i.e, they do not include any equivocal language indicating that the products may possibly not be covered by the recited patents.

18.     The Ring Pop product packages shown in Exhibit A were purchased in New Jersey within the past year.

19.     The '645 and '646 patents do not cover Defendant's Ring Pop products because each of said

3

patents expired in 1990.

20.    Defendant has marked at least some of its Ring Pop products over the past 6 years with the '645 and '646 patents.   Upon information and belief, at least a majority of Defendant's Ring Pop products distributed for sale within the United States over the past 6 have been marked with the '645 and '646 patents

21.    Defendant knows that patents have a patent term after which a patent expires and no longer provides patent protection to the patent holder.

22.    Upon information and belief, Defendant employs in-house intellectual property attorneys and also uses outside intellectual property counsel.

23.    Upon information and belief, Defendant was and is aware of the federal False Marking Statute, 35 U.S.C. §292.

24.    By marking its Ring Pop products with two U.S. patents that do not actually cover the products, Defendant committed numerous violations of 35 U.S.C. § 292(a).

25.    Upon information and belief, Defendant committed the marking violations with an intent to deceive competitors and the public.

26.    Relator seeks an award of monetary damages against Defendant, one half of which shall be paid to the United States pursuant to 35 U.S.C. § 292(b).

## COUNT

### (False Marking with U.S. Design Patent Nos. 242,645 and 242,646 under 35 U.S.C. § 292)

27.    Relator hereby reiterates and incorporates by reference each of the preceding allegations as though fully set forth herein.

4

28.     Defendant's Ring Pop lollipop product is sold individually wrapped in a package marked with United States Design Patent Nos. 242645 and 242646. See Exhibit A. No other patent numbers or patent application numbers are printed on the Ring Pop packaging.

29.     Each of the '645 patent and the '646 patent was issued on December 7, 1976 and each expired in 1990.

30.     Defendant knows that the '645 and '646 patent expired in 1990 because the expiration of these patents in 1990 was a central issue in a case decided in federal court in the Southern District of New York, namely *Topps Co. v. Gerrit J. Verburg Co.,* 96 Civ. 7302 (RWS) (S.D.N.Y). The decision, *Topps Co. v. Gerrit J. Verburg Co.,* 1996 U.S. Dist. LEXIS 18556, 41 U.S.P.Q.2D (BNA) 1412 (S.D.N.Y. 1996), is attached hereto as Exhibit D.

31.     The court in *Topps Co. v. Gerrit J. Verburg Co.* explicitly stated in its decision that:

> **In 1975, Topps filed patent applications in the U.S. Patent Office on the "inventive" ornamental design for a diamond gemstone ring candy and was awarded two patents, Nos. Des. 242,646 and Des. 242,645 on December 7, 1976. These patents expired on December 7, 1990, but reference to them continues to appear on the Topps' packaging.**

Accordingly, Defendant has long known (i) that its Ring Pop product is marked with the '645 and '646 patents and (ii) that the '645 and '646 patents do not cover the Ring Pop product because they both expired in 1990.

32.     Defendant also knows that the '645 and '646 patent expired in 1990 because United States design patents, such as these, explicitly state on their face both the patent issue date for the patent

and the term of the patent, 14 years.  See Exhibits B and C.

33.     Upon information and belief, Defendant falsely and with deceptive intent marked it Ring Pop product with the intention of creating an impression upon the public and competitors that the product is covered by in-force U.S. patents, when in fact it is not.

34.     Upon information and belief, Defendant falsely and with deceptive intent marked its Ring Pop product with the subject '645 and '646 patents with the belief that competitors and the public generally recognize that a patent is a grant of the right to exclude copying of a covered product and thus would think that the product is covered by these patents.   Thus, Defendant has deceptively used what it thought was competitors' and the public's general understanding of patents to its unfair advantage, rather than risk non-recognition or misunderstanding of any other non-patent type of protection that may or may not exist over its product which could lead to copying by competitors.

35.     As discussed in Exhibit D, from 1986 to 1996, 550 million Ring Pops were sold. Accordingly it is believed that the number of Ring Pops sold in the United States each year over the past six years is in the millions, if not tens of millions.  Upon information and belief, at least some, believed to be a majority if not all of the Ring Pops sold in the United States over the past six years have been falsely marked with the '645 and '646 patents, like those shown in Exhibit A.

36.     For the foregoing reasons, Defendant has falsely marked the products described with the intent to deceive the public, in violation of 35 U.S.C. § 292.

37.     Defendants' false marking of products not actually covered by the '645 and '646  patents has wrongfully quelled competition with respect to such products, thereby causing harm to Relator, the United States, consumers in general, and competitors alike.

38.     Defendant wrongfully and unlawfully advertised that the '645 and '646 patents cover its Ring Pop products when, in fact, neither do and, as a result, has benefited commercially and financially by maintaining false statements of patent rights.

39.     Pursuant to 35 U.S.C. §292(a), a fine is sought in an amount of up to Five Hundred Dollars per offending article, i.e., per falsely marked Ring Pop product packages, to be determined by the Court.  It is believed that the number of offenses is at least in the hundreds of thousands and may number in the tens of millions.

## PRAYER FOR RELIEF

**WHEREFORE,** Relator respectfully requests this Court to:

A.    Enter judgment against Defendant and in favor of Relator for the violations alleged in this Complaint;

B.    Order Defendant to pay a civil monetary fine of up to $500 per false marking offense pursuant to 35 U.S.C. §292, or an alternative amount as determined by the Court, one-half of which shall be paid to the United States; and

C.    Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Relator hereby demands a trial by jury on all issues so triable.

                                          KANTROWITZ GOLDHAMER
                                          & GRAIFMAN, P.C.

Dated: May 20, 2011

                                          BY: Barry S. Kantrowitz, Esq.
                                          210 Summit Avenue
                                          Montvale, NJ 07645
                                          Telephone (201) 391-7000

                                          *Attorneys for Relator*

*Of Counsel*:

Paul Diamond, Esq.
**DIAMOND LAW OFFCE, LLC**
1605 John Street, Suite 102
Fort Lee, New Jersey 07024
(201) 242-1110

8

# EXHIBIT A











# EXHIBIT B

# United States Patent [19]

## Shorin et al.

[11] **Des. 242,645**

[45] ** **Dec. 7, 1976**

[54] **RING HAVING A MATRIX FOR CANDY**

[75] Inventors: **Arthur T. Shorin**, New York, N.Y.;
**Stan Hart**, Beverly Hills, Calif.

[73] Assignee: **Topps Chewing Gum, Incorporated,**
Brooklyn, N.Y.

[**] Term: **14 Years**

[21] Appl. No.: **613,044**

[22] Filed: **Sept. 12, 1975**

[51] Int. Cl. ............................................ **D11—01**
[52] U.S. Cl. ........................................... **D45/10 C**
[58] Field of Search ............... D1/15, 22; D45/1 R,
D45/4 A–4 E, 10 A–10 C; 63/1 R, 2, 15–15.8

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 902,109 | 10/1908 | Powell | ........................ ..... D45/10 C |

| | | | |
|---|---|---|---|
| 2,817,219 | 12/1957 | Campbell | ........................ D45/10 A |
| D. 137,991 | 5/1944 | Walker | ........................ D45/10 C |
| D. 229,522 | 12/1973 | Parker | ........................ D45/10 A |

*Primary Examiner*—Joel Stearman
*Assistant Examiner*—Louis S. Zarfas
*Attorney, Agent, or Firm*—Mark T. Basseches

[57] **CLAIM**

The ornamental design for a ring having a matrix for candy, substantially as shown.

**DESCRIPTION**

FIG. 1 is a side elevational view of a ring having a matrix for candy showing our new design;
FIG. 2 is an end elevational view thereof;
FIG. 3 is a top plan view thereof;
FIG. 4 is a bottom plan view thereof.



**U.S. Patent**          Dec. 7, 1976          **Des. 242,645**

*F I G. I*



*FIG. 2*



*FIG. 3*



*FIG. 4*



# EXHIBIT C

# United States Patent [19]

### Shorin et al.

[11] **Des. 242,646**

[45] ** **Dec. 7, 1976**

[54] **COMBINED CANDY AND RING**

[75] Inventors: **Arthur T. Shorin,** New York, N.Y.; **Stan Hart,** Beverly Hills, Calif.

[73] Assignee: **Topps Chewing Gum, Incorporated,** Brooklyn, N.Y.

[**] Term: **14 Years**

[21] Appl. No.: **613,045**

[22] Filed: **Sept. 12, 1975**

[51] Int. Cl. ................................. **D11—01; D1—99**

[52] U.S. Cl. ...................................................... **D11/2**

[58] Field of Search ................... D45/1 R, 4 A–4 E, D45/10 A–10 C; D1/15, 22; 63/1 R, 2, 15–15.8

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 902,109 | 10/1908 | Powell | D45/10 C |
| D. 142,234 | 8/1945 | Sudbrink | D45/10 C |
| D. 229,522 | 12/1973 | Parker | D45/10 A |
| D. 232,965 | 9/1974 | Atwell | D45/10 C |

### OTHER PUBLICATIONS

*A Man's World Gallery of Gifts,* Mar. 6, 1972, p. 39—Topaz Ring Left Center.

*Primary Examiner*—Joel Stearman
*Assistant Examiner*—Louis S. Zarfas
*Attorney, Agent, or Firm*—Mark T. Basseches

[57] **CLAIM**

The ornamental design for a combined candy and ring, substantially as shown.

### DESCRIPTION

FIG. 1 is a side elevational view of a combined candy and ring showing our new design;
FIG. 2 is an end elevational view thereof;
FIG. 3 is a top plan view thereof;
FIG. 4 is a bottom plan view thereof.



**U.S. Patent**          Dec. 7, 1976          **Des. 242,646**

FIG. 1                    FIG. 2





FIG.3                    FIG.4

# EXHIBIT D



**THE TOPPS COMPANY, INC., Plaintiff, - against - GERRIT J. VERBURG CO. and B.I.P. HOLLAND B.V., Defendants.**

**96 Civ. 7302 (RWS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1996 U.S. Dist. LEXIS 18556; 41 U.S.P.Q.2D (BNA) 1412*

**December 12, 1996, Decided**
**December 13, 1996, FILED**

**DISPOSITION:**    **[*1]** Topp's motion granted and a preliminary injunction entered.

**COUNSEL:** APPEARANCES:

ATTORNEY FOR PLAINTIFF: HUTTON INGRAM YUZEK GAINEN CARROLL & BERTOLOTTI, New York, NY, By: DAVID G. EBERT, ESQ., Of Counsel.

ATTORNEYS FOR DEFENDANTS: OSTROLENK, FABER, GERB & SOFFEN, New York, NY, By: ROBERT C. FABER, ESQ., Of Counsel. HARNESS, DICKEY & PIERCE, Troy, MI, By: BERNARD J. CANTOR, ESQ., Of Counsel.

**JUDGES:** ROBERT W. SWEET, U.S.D.J.

**OPINION BY:** ROBERT W. SWEET

**OPINION**

*OPINION*

**Sweet, D.J.**

Plaintiff The Topps Company, Inc. ("Topps") has moved under *Rule 65, Fed. R. Civ. P.* for a preliminary injunction against defendant Gerrit J. Verburg Co. ("Verburg") and B.I.P. Holland B.V. ("B.I.P.") to bar infringement of Topps' Ring Pop trademark design and trade dress. Upon the findings and conclusions set forth below, the motion is granted, and an injunction will be entered.

*Prior Proceedings*

This action was commenced by Topps on September 25, 1996, and a motion for preliminary injunction was filed on October 11, 1996. The return day of the motion was adjourned by consent to November 20, 1996, discovery was had, and on the return day an evidentiary hearing was held. Final submissions **[*2]** were filed on November 27, 1996, at which time the matter was considered submitted.

*The Facts*

Early in the 1970's, B.I.P., then named Belga V.B., was selling a diamond-shaped ring lollipop under the name of "Candy Lick-A Ring," produced by the Honour Trading Company of Hong Kong. No evidence was adduced with respect to any sales in the United States.

During the mid-1970's, Topps developed the product for which it now seeks protection, the Ring Pop lollipop. It is comprised of a candy portion in the shape of a solitaire jewel, supported by a plastic base portion in the form of a stylized, or "play," ring. The Ring Pop is held by inserting a finger through the ring, and the candy is then licked.

In 1975, Topps filed patent applications in the U.S. Patent Office on the "inventive" ornamental design for a diamond gemstone ring candy and was awarded two patents, Nos. Des. 242,646 and Des. 242,645 on December 7, 1976. These patents expired on December 7, 1990, but reference to them continues to appear on the Topps' packaging.

On June 1, 1976 a trademark was registered for Ring Pop by Topps and on July 26, 1994 a trademark was is-

Case 2:11-cv-03011-FSH-MAS   Document 1   Filed 05/25/11   Page 20 of 26 PageID: 20

Page 2

1996 U.S. Dist. LEXIS 18556, *; 41 U.S.P.Q.2D (BNA) 1412

sued consisting of "a candy portion in the [*3] configuration of a jewel mounted on a stylized ring."

The Ring Pop product has been sold in individual cellophane packages, having a transparent front portion through which the product is visible. In addition, the individually wrapped Ring Pop candies are sold at retail from display boxes which show the product configuration substantially as depicted in the trademark registration. Substantially the same configurations of display box and individual wrapper have been used for this product for at least the past ten years.

The configuration of the candy element of the Ring Pop design serves no particular manufacturing need or requirement, and there is no manufacturing reason why the jewel shape could not be designed and configured in some manner other than the Ring Pop design. Moreover, the Ring Pop design and the shape of the candy jewel make the Ring Pop more difficult and more costly to manufacture than other jewel shapes.

From 1975 to the present, Topps has increased its sales of the Ring Pop. In the past ten years, 550,000,000 units of this product have been sold, and Topps has continued to promote and advertise this product by television advertising, having spent more than $ 5,000,000 [*4] during the past ten years. Topps' advertisements on broadcast television during the past ten years of the Ring Pop emphasized the configuration of the product during children's programming on well-known, popular programs, such as Tom & Jerry Cartoons, Teenage Mutant Ninja Turtles, and Power Rangers, shows specifically aimed at the children for whom the Ring Pop candies were conceived. The buyers of these products are not sophisticated purchasers.

Ring-Pops are sold at retail in the country by mass merchandisers (such as WalMart, and K-Mart), drug chains (such as CVS and Revco), convenience stores (such as 7-Eleven and Circle K), and "mom and pop" candy stores and local kiosks. Topps uses a distinctive and accurate artistic rendering of its Ring Pop product on all packages, containers and marketing and advertising materials, and other than defendants' Diamond Lollipops, there have been no other candies sold domestically at any time that resemble the Ring Pop candy configuration.

Verburg, a Michigan corporation has been in the candy business since 1964 and distributes a number of different candy products under the Gerrit's trademark, including the Diamond Lollipop, which is the subject [*5] of this action. Verburg began design of the Diamond Pop in 1992 and sought to sell the product in July 1995. Because of a production problem, there was a recall and sales began again in July 1996.

The individual wrapping of the Diamond Lollipop includes a picture of a stylized ring supporting a facetted candy jewel configuration. Within the package, and visible through a transparent window in the packaging, is a product which consists of a candy portion in the configuration of a facetted jewel mounted on a stylized ring. The individually wrapped Diamond Lollipops are sold at retail from display boxes.

Both the pictures of the facetted jewel-shaped candy on a ring on the wrapper and on the display box for the Diamond Lollipop candies, and the candy product in the wrapper, appear to be extremely similar, if not identical, to the Ring Pop product sold by Topps and described and depicted in the trademark registration obtained by Topps. The background color of both Topps' and Verburg's display packages is yellow, and the picture of the ring and jewel-shaped candy on both Topps' package and on Verburg's package is colored red and blue. Moreover, when seen side-by-side, the two products [*6] are almost identical.

The Ring Pop product, as well as the Diamond Lollipop product are both candies which are expressly intended to be consumed by children. The packaging for the Diamond Lollipop fails to meet the requirements set by regulations of the United States Food and Drug Administration ("FDA") promulgated in accordance with the Nutrition Labelling and Education Act, for setting forth nutritional information.

Topps first learned about the activities of Verburg at a July 1996 national candy trade show, where Verburg exhibited and offered to sell to the trade a candy under the designation "Diamond Lolli-Pop." A warning letter was sent on behalf of Topps to Verburg. Actual sales of the Diamond Lolli-Pop were made in August 1996.

The Diamond Lollipop is shaped with fewer facets and is broader, but larger, than the diamond on the Topps' Ring Pop. With regard to the number of facets, the Diamond Lollipop is shaped with six facets, in contrast to the Ring Pop, which is shaped with eight. However, the rendering of the Diamond Lollipop on all packaging and containers misrepresents the Diamond Lollipop as having eight facets, rather than the six that actually appear on the Verburg [*7] product. In this additional respect, then, the artistic rendering on Verburg's packaging more closely resembles the actual Topps product and packaging than Verburg's own product. To whatever extent Verburg's two fewer facets may otherwise have been claimed to aid in avoiding confusion between the products, its deceptive artistic depiction also renders any such distinction a nullity.

Both products have a plastic disk supporting the candy portion. The Diamond Lollipop plastic disk is scalloped, whereas the Ring Pop disk is a smooth circle.

1996 U.S. Dist. LEXIS 18556, *; 41 U.S.P.Q.2D (BNA) 1412

However, the artistic rendering that Verburg uses on all labelling, packaging, sales literature and containers shows the product with a round-disk design, rather than a scalloped disk.

Verburg has applied its trademarks "GERRITS DIAMOND" and "DIAMOND" on the packaging and displays. However, when the products are viewed removed from the display and individual packaging, there is a likelihood of confusion.

Moreover, the Gerrit mark does not appear on the individual Diamond Lollipop wrappers, and the products are "frequently dumped into [selling] bins," by retailers rather than sold from the display boxes. (Tr. 60). Verburg's use on all packaging [*8] of an artistic rendering of a product that more closely resembles Ring Pops than Diamond Lollipops heightens the possibility of confusion.

The sales of the Ring Pop over the past ten years, together with the significant advertising carried out by Topps of the Ring Pop configuration have established that Ring Pop is a well-known mark in the United States. Persons seeing the infringers' product will undoubtedly connect that product with the source of the Ring Pop lollipop and believe that they come from the same source, thus raising the problems of the reputation of Topps being in the hands of an unrelated party.

There is a likelihood of confusion between the two products both at the point of sale, based upon similarities in the containers and wrappers for the two products, and after sale, based upon the virtual identity in appearance of the two products when removed from their respective wrappers and containers. However, no evidence, factual or expert, was adduced of actual confusion.

The two products are similar almost to the degree of identity, and whatever gap between them is bridged by the Diamond Pop. No evidence has been adduced with respect to Verburg's intent in introducing [*9] the Diamond Lolli-Pop.

### Conclusions of Law

#### I. *Standards for Granting a Preliminary Injunction*

A motion for a preliminary injunction against a putative infringer should be granted when the moving party shows: (1) likelihood of irreparable injury; and (2) either (a) likelihood of success on the merits, or (b) sufficiently serious questions on the merits and a balance of hardships tipping decidedly in plaintiff's favor. *Western Publishing Co., Inc. v. Rose Art Industries*, 910 F.2d 57, 59 (2d Cir. 1990); *Deeper Light Christian Publishing Inc. v. Board of Education of the City of New York*, 852 F.2d 676, 679 (2d Cir. 1988).

It is well settled in this Circuit that in trademark infringement actions, a finding of likelihood of confusion of a valid trademark between the marks in question provides sufficient grounds for issuance of a preliminary injunction, without further evidence of actual injury. *American Cyanamid Co. v. Compagna per le Farmacie in Italia S.p.A.*, 847 F.2d 53, 55 (2d Cir. 1988). Irreparable injury is essentially presumed where a likelihood of confusion between trademarks is demonstrated. *Omega Importing Corp. v. Petri-Kine Camera Co.*, [*10] 451 F.2d 1190, 1195 (2d Cir. 1971).

### II. *There is a Likelihood of success on the Merits*

#### A. *There is a Likelihood of Confusion About the Source of the Diamond Pop*

Section 32 of the Lanham Act, *15 U.S.C. § 1114*, states that liability for infringement of a registered trademark attaches if a party's use of a registered mark is likely "to cause confusion, or to cause mistake, or to deceive." Section 32 thus prohibits the use in commerce of another's registered trademark where such use is likely to cause confusion, or to cause mistake, or to deceive.

This action is one involving principles of trade dress, which includes the manner in which a product is dressed up to go to market with a label, package, display card and similar packaging elements, as well as the design and appearance of the product itself, and its container. *L & J.G. Stickley, Inc. v. Canal Dover Furniture Co.*, 79 F.3d 258, 262 (2d Cir. 1996).

An action for trade dress infringement may be maintained if plaintiff is able to show either that: (1) its trade dress is inherently distinctive or has acquired a secondary meaning indicative of the product's source; and (2) there is a likelihood of confusion [*11] between the trade dress of the two products. *Villeroy & Boch Keramische Werke, K.G. v. THC Systems, Inc.*, 999 F.2d 619, 620 (2d Cir. 1993). The initial inquiry, then, is whether Topps has a valid protectible trade dress mark. *See Eli Lilly and Co. v. Revlon, Inc.*, 577 F. Supp. 477, 482-83 (S.D.N.Y. 1983).

Trade dress can identify a product in two ways. It may be inherently distinctive, that is, the trade dress "is 'likely to serve primarily as a designator of origin of the product,'" *EFS Mktg. Inc. v. Russ Berrie & Company*, 76 F.3d 487, 491 (2d Cir. 1996) (quotation omitted), or it may acquire distinctiveness by gaining in the minds of consumers a secondary meaning associating the trade dress with the product's source. *L & J.G. Stickley, Inc.*, 79 F.3d at 262.

Topps holds a design registration for Ring Pops, with a first use of February 26, 1975 and a registration date of July 26, 1994. The registration provides a strong

1996 U.S. Dist. LEXIS 18556, *; 41 U.S.P.Q.2D (BNA) 1412

presumption of the validity of the mark. *American Home Products Corp. v. Johnson Chemical Co., 589 F.2d 103, 106 (2d Cir. 1978)* and *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc., 687 F.2d 563, 567 (2d Cir. 1982)*, and registered [*12] trademarks should be afforded the utmost protection. *Lois Sportswear, USA, Inc. v. Levi Strauss & Co., 799 F.2d 867, 871 (2d Cir. 1986)*. Although the presumption may be rebutted in this Circuit, the Court of Appeals has determined the *prima facie* effect of a registration means not only that the party contesting the mark has the burden of going forward with the evidence, but that the party contesting validity "must put something more into the scales than the registrant." *Aluminum Fabricating Co. v. Season-All Window Corp., 259 F.2d 314, 316 (2d Cir. 1958)*. This presumption covers only the exclusive right to use as to the goods specified in the registration. Lanham Act Section 33(a), *15 U.S.C. § 1115(a)*.

Although these earlier cases relate to conventional trademarks, rather than the trade dress product configuration of the present case, there is no basis for a distinction between these two types of marks in the Lanham Act when considering the rights of the trademark holder. *See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 770, 120 L. Ed. 2d 615, 112 S. Ct. 2753 (1992)* ("There is no persuasive reason to apply to trade dress a general requirement of secondary meaning [*13] which is generally at odds with the principles generally applicable to infringement suits under § 43(a)"). Protection of trade dress, no less than trademarks, serves the Act's purpose to "secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers. National protection of trademarks is desirable, Congress concluded, because trademarks foster competition and the maintenance of quality by, securing to the producer the benefits of good reputation." *Park ' N Fly Inc. v. Dollar Park & Fly Inc., 469 U.S. 189, 198, 83 L. Ed. 2d 582, 105 S. Ct. 658 (1985)*. Although *Taco Cabana* was brought for an unregistered mark, under Section 43(a) of the Lanham Act, the same argument applies to registered marks:

> If a verbal or symbolic mark or the features of a product design may be registered under Section 2, it necessarily is a mark "by which the goods of the applicant may be distinguished from the goods of others, ... and must be registered unless otherwise disqualified. Since Section 2 requires secondary meaning only as a condition to registering descriptive marks, there are plainly marks which are registerable [*14] without showing secondary meaning. These same marks, even if not registered, remain inherently capable of distinguishing the goods of the users of these marks. Furthermore, the copier of such a mark may be seen as falsely claiming that its products may for some reason be thought of as originating from the plaintiff.

*Taco Cabana, 505 U.S. at 772* (citation omitted).

Since *Taco Cabana*, the Second Circuit has articulated the basis for determining inherent distinctiveness of a product configuration trade dress: an inherently distinctive trade dress is one that is "likely to serve primarily as a designator of origin of the product." *Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1008 (2d Cir. 1995)* (quoting *Duraco Prods. Inc. v. Joy Plastic Enterprises, Ltd., 40 F.3d 1431, 1449 (3d Cir. 1994))*.

When making this determination, the court should take "into account the nature of the designations and the context in which it is used." *See L. & J.G. Stickley, Inc., 79 F.3d at 262 (2d Cir. 1996)*. Specifically, it must be determined "whether the design, shape or combination of elements is so unique, unusual or unexpected in the market that one can assume without proof [*15] that it will automatically be perceived by customers as an indicia of origin." *Id.*

With respect to secondary meaning, factors that courts will look at to determine secondary meaning include advertising expenditures, consumer studies linking the dress to the source, unsolicited media coverage of the product, sales success, attempts to plagiarize the product and length and exclusivity of the dress use. No one of these factors is determinative. *Id. at 263 (citing Centaur-Communications, Ltd. v. A/S/M Communications, Inc., 830 F.2d 1217, 1222 (2d Cir. 1987))*.

Based upon the above findings of fact and the strong presumption of the validity of the trademark registration, this Court concludes that Topps holds a valid and protectible trade dress mark. The design is sufficiently unique in the market to indicate the product's source. Moreover, Topps' extensive advertising, increasing sales success and extended exclusive use in the United States, support a finding that the Ring Pop configuration has acquired a secondary meaning indicative of the configuration's source.

Topps has also demonstrated that there is a likelihood of confusion about the source of the Diamond Lollipop. [*16] The heart of a successful claim based on the Lanham Act is the showing of likelihood of confusion with a distinctive trademark. *Standard & Poor's Corp. v. Commodity Exchange Inc., 683 F.2d 704, 708 (2d Cir. 1982)*. Confusion exists where an appreciable number of consumers are likely to be misled, or simply

1996 U.S. Dist. LEXIS 18556, *; 41 U.S.P.Q.2D (BNA) 1412

confused, as to the source of the goods in question. *McGregor-Doniger v. Drizzle, Inc., 599 F.2d 1126, 1130 (2d Cir. 1979).* This includes confusion in the minds of consumers as to the source or sponsorship of defendant's products and also confusion as to the relationship between the trademark holder and another seeking to use the trademark. *Home Box Office v. Showtime/The Movie Channel, 832 F.2d 1311, 1314 (2d Cir. 1987).* The likelihood of confusion standard encompasses confusion of consumers other than direct purchasers, including observers of those using an allegedly infringing article after sale, such as when the product is removed from the wrapper. *See Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches Inc., 221 F.2d 464, 466 (2d Cir. 1995)* (confusion of guests of purchasers as to source of clock actionable). *See also, United States* [*17] *v. Hon, 904 F.2d 803, 804-05 (2d Cir. 1990)* (under *18 U.S.C. § 2320,* jury could consider confusion of members of general public as well as potential purchasers). Confusion about the source of a product can occur at the point of sale or after sale. *Lois Sportswear, 799 F.2d at 872.*

In this Circuit, the determination of likelihood of confusion is frequently based upon the multi-faceted balancing test first set forth by the Honorable Henry Friendly of this Circuit in *Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir. cert. denied, 368 U.S. 820, 82 S. Ct. 36, 7 L. Ed. 2d 25 (1961).* The factors include: (1) the strength of the plaintiff's mark, (2) the degree of similarity between the products, (3) the proximity of the products, (4) actual confusion, (5) defendant's good faith, (6) the quality of defendant's product, and (7) the sophistication of buyers.

However, where a registered trademark is owned by the plaintiff, and where the product configuration used by the defendants is substantially "the same exact mark as" used by plaintiff, "there is more than a mere likelihood of confusion" between the former and the latter. *Hard Rock Cafe Licensing* [*18] *Corporation v. Khushid International, 95 Civ. 10176, 1996 WL 507322 at *3 (S.D.N.Y. Sept. 4, 1996).* Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the *Polaroid* factors. *See, id.*

Even in the absence of direct evidence of actual customer confusion, the two products are sufficiently identical to result in confusing the consumer in the belief that they are both from the same source, or that there is at least common sponsorship. Topps' case here is augmented by the undeniable strength of their registered mark. 550,000,000 units have been sold in the past ten years and extensive advertising has occurred on a highly effective medium, children's television. The value of the

Topps configuration mark is further highlighted by the fact that a picture of the configuration is prominently depicted on Verburg's display box and individual wrappers.

Even under a conventional analysis of the *Polaroid* factors, an injunction would be appropriate in this case. Topps' mark is strong, there has been no third party use, the marks are nearly identical and [*19] the markets identical for the two products. The buyers are almost entirely minors, unsophisticated in product differentiation.

There is confusion at the point of sale by consumers who may believe Topps is the manufacturer. There is also confusion by such consumers who may believe Topps somehow is associated with defendants or has consented to defendants use of its trademark, *i.e.,* that Topps has sponsored or otherwise approved of the use of the trademark. *See Lois Sportswear, 799 F.2d at 872.*

There is also confusion after the time of sale among non-customers. Persons who may see the Diamond Lollipop being eaten would assume that that product was actually Topps' Ring Pop.

Although the Diamond Lollipop plastic disk is scalloped, whereas the Ring Pop disk is round, the scalloping of the plastic disk does little to identify defendants' Diamond Lollipop as a product distinct from Ring Pops. Moreover, the artistic rendering that Verburg uses on all labeling, packaging, sales literature and containers to depict and identify the Diamond Lollipop shows it with the Topps round-disk design used for Ring Pops rather than the scalloped disk that the defendants actually use for their [*20] Diamond Lollipop product. The round Ring Pop disk is accurately depicted on Topps' rendering of its product appearing on all labels, literature, packaging and containers. Therefore, Verburg's artistic rendering more closely resembles the Ring Pop and the visual rendering Topps uses for Ring Pop than it does the Verburg's product.

Persons seeing the infringers' product will undoubtedly connect that product with the source of the Ring Pop lollipop and believe that they come from the same source, thus subjecting Topps' reputation to possible harm by an unrelated party.

Topps has satisfied its burden of showing likelihood of confusion with its distinctive trade dress.

**B. *Verburg Has Failed to Establish Functionality Defense***

It is settled that defendant bears the burden of establishing the affirmative defense of functionality. *Le Sportsac, Inc. v. K Mart Corp., 754 F.2d 71, 76 (2d Cir. 1985).*

Case 2:11-cv-03011-FSH-MAS   Document 1   Filed 05/25/11   Page 24 of 26 PageID: 24

Page 6

1996 U.S. Dist. LEXIS 18556, *; 41 U.S.P.Q.2D (BNA) 1412

In *Metro Kane Imports, Ltd. v. Rowoco, Inc.*, 618 F. Supp. 273, 275 (S.D.N.Y. 1985), this Court sought formulated physical "functionality" as follows:

> The Second Circuit's redefinition of functionality as expressed in *LeSportsac* stresses that a feature is functional **[*21]** if it "is essential to the use or purpose of the article or affects the cost or quality of the article." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n.10, 72 L. Ed. 2d 606, 102 S. Ct. 2182, (1982). A design feature is essential only if it is dictated by the functions to be performed; a feature that merely accommodates a useful function is not enough. *Warner Bros., Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 330. And a design feature "affecting the cost or qualify of the article" is "one which permits the article to be manufactured at a lower cost ... or which constitutes an improvement in the operation of the goods."

*Id.*

As the Second Circuit set forth in *Stormy Clime Ltd. v. Progroup, Inc.*, 809 F.2d 971, 976 (2d Cir. 1987):

> The important purpose of the functionality defense is "to protect advances in functional design from being monopolized [so as] to encourage competition and the broadest dissemination of useful design features" . . . The functionality inquiry in the present case should have focused on whether bestowing trade dress protection upon Stormy clime's arrangement of features [on raincoats] "will hinder competition **[*22]** or impinge upon the rights of others to compete effectively in the sale of goods."

(Quotations omitted).

To prevail on an "aesthetic functionality" defense, Verburg must show that a significant number of customers or potential customers prefer the features of the prior user's product and that there are no alternative designs that might appeal to these customers. *Lon Tai Shing Co. v. Koch & Lowy*, 1990 U.S. Dist. LEXIS 19123, 19 U.S.P.Q.2D (BNA) 1081, 1104-05, 1991 WL 170734 (S.D.N.Y. 1990).

According to Verburg, the Ring Pop design is physically and aesthetically functional because (i) Verburg cannot compete with the Ring Pop without producing a diamond-shaped candy element; and (ii) there is no manner in which to configure a diamond-shaped candy element other than by copying the design used by Topps for approximately 20 years. Verburg offered no evidence to establish that it could not make a diamond configured in some shape other than the one that Topps created for Ring Pops. Its functionality argument rests on the contention that the product category at issue is "diamond engagement shaped lollipops" and that the only way for Verburg to compete in this product line is **[*23]** to copy Topps' jewel design, more or less precisely.

Courts define product lines rather broadly for purposes of determining functionality. An infringer cannot circumvent trade dress protection by asserting a defense of functionality on the theory that the prior user's design constitutes a narrow product line, with which the infringer can only compete by copying the prior user's design elements. Thus, in *Brandir Int'l, Inc. v. Cascade Pacific Lumber Co.*, 834 F.2d 1142 (2d Cir. 1987), the infringer argued that the product category for functionality analysis purposes was one-piece undulating bicycle racks specifically. The Court rejected this argument, finding that the product line for purposes of determining functionality was to be viewed in terms of bicycle racks generally and not one-piece undulating bicycle racks. *Id. at 1148.*

In *In re DC Comics, Inc.*, 689 F.2d 1042 (C.C.P.A. 1982), at issue was registration of particular drawings of three comic book characters, "Superman," "Batman," and "Joker." The product line was determined to be toy dolls generally and not, for example, "Superman Dolls." *Id. at 1045.* As the Court explained, the prior user could not be considered **[*24]** to have created a new product category, the rubric of which (for example, "Superman Dolls") should remain available for all to employ in commerce, simply by having originated and promoted certain unique characters and products related to them. *Id.* The Court also held that registration of the prior user's drawings as trademarks for toy dolls would not diminish the store of common words and visual representations which its competitors and the general public alike may freely use. *Id.* Hence, the prior user was found not to be in a position to impair competition in the sale of toy dolls generally or "super hero" or villain figures in particular. *Id.*

In *Warner Bros. Inc. v. Gay Toys, Inc.*, 724 F.2d 327 (2d Cir. 1983), the prior user argued that functionality had to be considered in terms of toy cars generally and not "Dukes of Hazard" toy cars specifically. The Court agreed. *Id. at 330.*

Case 2:11-cv-03011-FSH-MAS   Document 1   Filed 05/25/11   Page 25 of 26 PageID: 25

Page 7

1996 U.S. Dist. LEXIS 18556, *; 41 U.S.P.Q.2D (BNA) 1412

These authorities support Topps' position. Indeed, Verburg admitted that Diamond Lollipops do compete with another Topps lollipop, the "Push Pop," which is configured nothing like the Ring Pop, but resembles, and functions in a manner reminiscent of, a lipstick container and has a cylindrically [*25] shaped candy element. Diamond engagement shaped lollipops do not constitute a distinct product line within the candy industry. The product line is lollipops.

The Second Circuit determined in *Knitwaves* that "a design is functional because of its aesthetic value only if it confers a significant benefit that cannot practically be duplicated by the use of alternative designs." *71 F.3d at 1006* (quoting *Restatement (3d) of Unfair Competition § 17*, comment C).

In *Wallace International Silversmith v. Godinger Silver Art, 916 F.2d 76 (2d Cir. 1990)*, the Court pointed out that "a producer does not lose a design trademark just because the public finds it pleasing." *Id. at 81*. The whole concept of aesthetic functionality requires the showing of "foreclosure of alternatives," not merely a showing that "a particular design is attractive to a significant number of consumers." *Id.* The extension of trade dress protection to Topps' candy design would not restrict Verburg's ability to produce alternative competitive designs and Verburg therefore does not meet the market foreclosure requirement of functionality.

Verburg's assertion that it could not come up with alternative designs [*26] is unpersuasive. As a matter of common sense and everyday experience, as well as testimony offered by Topps, there are limitless possible configurations for a jewel or diamond-shaped candy element, notwithstanding Verburg's statement that he had never seen an actual diamond fashioned or cut in a configuration other than that employed for these candy products.

In addition, the expiration of the design patent that Topps had obtained for Ring Pops is presumptive evidence of non-functionality. As explained in *McCarthy on Trademarks and Unfair Competition*, § 6.03[5]:

> In fact, a design patent, rather than detracting from a claim of trademark, may support such a claim. Since a design patent is granted only for non-functional designs, it may be presumptive evidence of non-functionality and thus support the trademark claimant.

*See, e.g., In re Morton-Norwich Products, Inc., 671 F.2d 1332, 1342, n.3 (C.C.P.A. 1982)* (design patent, "at least

presumptively, indicates that the design is not *de jure* functional").

Verburg has cited Second Circuit decisions sustaining a functionality defense. *See, e.g., Knitwaves, 71 F.3d at 1005-07 (2d Cir. 1995)*; [*27] and *Wallace International Silversmith, 916 F.2d at 81*. However, none of these support their defense.

In the *Knitwaves* case, the particular design on the sweater was one of many usual "Fall motif" patterns. Consumers would not be likely to consider any one particular design of that sort to be an indication that the product comes from a particular single source. However, a product configuration is inherently distinctive where, as here, the "design, shape or combination of elements is so unique, unusual or unexpected in the market that one can assume without proof that it will automatically be perceived by customers as an indicia of origin." *See L.&J.G. Stickley, 79 F.3d at 262 (2d Cir. 1996)*.

The present case is different from *Wallace International Silversmith*, where the plaintiff attempted to prevent a competitor from selling silverware in a broad range of baroque designs. The court there found that baroque designs were commonly used in the silverware market and that the elements used by both companies, plaintiff and defendant, were "common to all baroque-style designs used in the silverware market," and therefore no one party could have exclusive rights to use those [*28] features, generally. *916 F.2d at 81*. The court did recognize, however, that protection over a particular baroque style could be protectible, if shown to be distinctive. *Id. at 82*. Here, the unique and unusual nature of the plaintiff's design for a hard-sucking candy makes the present candy configuration inherently distinctive.

Moreover, In *Villeroy & Boch Werke v. T.H.C. Systems, Inc., 999 F.2d 619 (2d Cir. 1993)*, the court did enforce an exclusive right to a specific basket pattern used on hotel dinnerware where the argument was also made that it was necessary to copy that pattern in order to compete in the marketplace.

Here, there had not been previously available in the US market a lollipop product including a ring support with a jewel-shaped hard candy supported by the ring. Thus, as soon as the consumer would have seen such a unique and novel product, they would perceive immediately that it came from a single source, because the design was so different from other products then on the market.

Under the cited cases, considering the availability of alternative, designs and increased difficulty and cost of manufacture of the Topps' Ring Pop design, and because the design [*29] of the Ring Pop candy element is in no way dictated by the function to be performed by Ring

Pop (to be consumed as a candy lollipop), Verburg has failed to establish that trademark protection is not available for the Ring Pop on the basis of functionality. *See Metro Kane Imports, Ltd. v. Rowoco, Inc., 618 F. Supp. 273, 275 (S.D.N.Y. 1985)* (a feature is functional if it is essential to the use or purpose of the article -- i.e., is dictated by the functions to be performed -- or affects the cost or quality of the article.)

### C. The Expiration of Its Patent does Not Bar Topps' Enforcement of Its Trademark

There is no inherent conflict between trademark rights under the Lanham Act and patent rights. Because the Lanham Act and the patent statute are both federal statutes, there is no preemption. A product can be both patentable and protected by trademark rights as long as the particular design protected does not have a utilitarian function. *See Stormy Clime Ltd. v. Progroup, Inc., 809 F.2d 971, 977-78 (2d Cir. 1987)*, and *Ives Laboratories v. Darby Drug Co., 601 F.2d 631, 642-43 (2d Cir. 1979)*. In fact, as discussed above, a design patent, such as that previously held **[*30]** by Topps, presumptively indicates that the design at issue is not de jure functional. The United States Patent and Trademark Office, as well as the Court of Appeals for the Second Circuit, agree spe-

cifically that the existence of an expired design patent does not preclude trademark rights, or registration of a trademark. *See In re Morton Norwich Products, Inc., 671 F.2d at 1342 n.3.*

The presumed irreparability of the injury to Topps and the likelihood that as a consequence of the facts found above it will prevail on the merits, provide the appropriate grounds for the issuance of a preliminary injunction.

### Conclusion

Upon the facts found above and the conclusions of law set forth, Topps' motion is hereby granted and a preliminary injunction will be entered. Settle order on notice.

It is so ordered.

**New York, N. Y.**

**December 12, 1996**

**ROBERT W. SWEET**

**U.S.D.J.**